## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 22 2016, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael T. Hotz
Spitzer Herriman Stephenson
Holderead Conner & Persinger, LLP
Marion, Indiana

ATTORNEY FOR APPELLEE

David W. Stone, IV
Stone Law Office & Legal Research
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Paternity of E.E.,

J.E.,

*Appellant-Petitioner*,

v.

T.C.,

*Appellee-Respondent*.

November 22, 2016

Court of Appeals Case No.
27A04-1601-JP-204

Appeal from the Grant Superior Court

The Honorable Jeffrey D. Todd, Judge

Trial Court Cause No.
27D01-1109-JP-928

**Brown, Judge.**

[1] J.E. ("Father") appeals from the order of the trial court awarding custody of E.E. ("Child") to T.C. ("Mother"). Father raises four issues which we consolidate and restate as whether the court erred in determining the custody of Child. We affirm.

## Facts and Procedural History

[2] Child was born to Father and Mother on January 12, 2009, when Father was eighteen years old and Mother was sixteen years old. Mother and Father lived together several times during the first two and one-half years of Child's life. At some point, Father and Mother separated permanently, and sometime in March 2011 Father and Child moved in with Father's father ("Grandfather") and mother ("Grandmother," and together with Grandfather, "Grandparents").

[3] On September 14, 2011, Father filed a Petition to Establish Paternity and for Emergency Custody. On October 31, 2011, the court issued an Agreed Order stating that the parties agreed that Father would have temporary custody of Child until further order of the court, that Mother would have supervised/restricted parenting time, and that, should something happen to Father, Grandparents would be appointed custodians over Child. At some point, Mother relocated from Marion, Indiana, to Decatur, Indiana, and traveled to Marion to exercise parenting time with Child.

[4] On October 8, 2014, Mother filed a Petition to Modify Custody and requested a hearing, and the court later appointed a guardian ad litem (the "GAL"). The court held an evidentiary hearing on September 29 and November 5 and 6,

2015, at which it heard testimony from, among others, Father, Mother, child services workers, Grandfather, Child's school teacher, Mother's current husband, and a school psychologist. Father filed proposed findings of fact on November 24, 2015, and Mother filed proposed findings of fact on December 1, 2015.

[5] On December 31, 2015, the court entered Findings of Fact, Conclusions of Law, and Order for Judgment and attached a child support worksheet. Under a heading for findings of fact, the court found that Father's September 2011 petition resulted from the fact Child had been physically abused on or about August 26, 2011 while in Mother's care, and the abuse was immediately reported to authorities, Mother was at work when the abuse occurred but acknowledged that she was using drugs at that time in her life, she was not charged criminally, and she and her boyfriend fled to Florida for approximately ten days.[1] The court found that Mother exercised supervised/restricted parenting time until May 15, 2012, at which time the court entered an order granting her unsupervised visitation, that on June 11, 2013, the court held a hearing after which it ordered her parenting time to be supervised,[2] and that

_____

[1] When asked how she returned, Mother testified she went to a place where there was a police officer, she was taken to hospital, her mother was contacted, and her mother and grandfather picked her up at the hospital.

[2] The court found that, after the May 15, 2012 order, Mother violated the order by allowing non-family members to be present during her parenting time, as a result Father had petitioned to again restrict her parenting time, the court held a hearing on June 11, 2013, at which Mother failed to appear and of which she claims not to have received timely notice, and that following the presentation of evidence the court again ordered Mother's parenting time to be supervised.

Mother thereafter relocated from Marion, Indiana to Decatur, Indiana with her then boyfriend because he found a higher paying job in Decatur.

[6] The court found that Mother consistently traveled from Decatur to Marion over the next two years to exercise parenting time with Child, that her time with Child was sometimes supervised by Father but the majority of her visits were primarily supervised by Grandfather, and that the parenting time sessions were difficult in part because the two men supervising her time did little to hide their animosity toward her. The court found that despite these difficulties Mother continued to exercise her parenting time with Child when she was pregnant with twins and after she gave birth to them, one of whom has special medical needs, in August 2013. The court also noted that Mother filed her petition on October 8, 2014, that by agreement she was granted unsupervised parenting time on June 29, 2015, that this parenting time had gone well, and that Mother has a high school degree and had not used illegal drugs for over four years. The court found that Father has a GED and that, since October 31, 2011, he has worked numerous jobs, mostly on third shift.

[7] The court further found that the evidence presented clearly demonstrates that Grandparents had been Child's primary caregivers and *de facto* custodians for the last four years and that during this time Child has primarily lived at Grandparents' home where he has remained at least five nights per week. The court stated it is troubled by the fact Grandfather routinely strips Child and photographs him after Mother exercises parenting time, that Grandfather has taken nearly one hundred photographs of Child, and that Father has done

nothing to stop it. It found that Father lost his job as a warehouse worker in September 2015 and currently lived in Grandparents' home, that he recently became employed as a first shift cashier at a gas station and intends to continue residing at Grandparents' home, and that, unlike the majority of his life during which he worked third shift jobs, Father believes his current job will allow him to spend more time with Child before and after school.

[8] The court noted that Child was enrolled in the first grade, has experienced problems since starting elementary school and was found to qualify for special education services due to his emotional disability, that an individual education plan had been developed to help Child, and that there have been some improvements in Child's behavior and performance since the plan was implemented. The court found that Grandfather has been much more active than Father in monitoring Child's school progress, and that Grandfather and Father would not tell Mother where Child was going to school and told her she was not permitted to contact Child's school. The court noted that the GAL, after a thorough investigation, tendered a report recommending that Mother be awarded primary physical custody of Child, that Mother has matured significantly since she gave birth to Child at a very young age, and that she is now married to a responsible man who has a good job and is supportive of her. It also noted that Mother's nurturing qualities were apparent to the court, and that on the other hand Father does not appear to have matured significantly since Child's birth, has either left or been terminated from numerous jobs, has

married and divorced, has moved in and out of his parents' home, and did not exhibit nurturing qualities when he testified.

[9] In its conclusions of law, the court stated that, while a permanent custody order was never entered, Father's position was that the proceeding was one to modify custody and that Mother captioned the pleading giving rise to the proceeding as a petition to modify custody. The court noted there is precedent for using a modification standard when a parent acquiesces to an emergency order that has been in place for years, that nonetheless counsel for the parties met the court in chambers minutes before the hearing on Mother's petition and agreed that this was an initial permanent custody determination, and that thereafter the court announced on the record before any evidence was presented that this was an initial custody determination and Father offered no objections. The court concluded that Father waived any claim of error that the trial court used an incorrect legal standard.

[10] The court concluded that the GAL's report contains sound reasoning and was issued following a thorough investigation, that it is in the best interest of Child that Mother be awarded primary physical custody, and that Mother has demonstrated she is the more mature, nurturing, and engaged parent which is especially important as Child suffers from an emotional disability. The court further concluded that, "[e]ven if it were to apply the stricter modification of custody standard . . . , the Court finds that a modification of custody in favor of Mother is in the best interest of child, and there is a substantial change in one

(1) or more of the factors considered under Ind. Code § 31-14-13-6,"[3] namely, that Child has been primarily cared for by Grandparents and that Child has developed significant emotional and behavioral issues since the emergency custody order was entered. The court ordered that Mother maintain primary physical custody, that Father and Mother have joint legal custody, and that Father have parenting time pursuant to the Indiana Parenting Time Guidelines and pay child support of thirty-four dollars per week.

## *Discussion*

[11] The issue is whether the trial court erred in the determining custody of Child. The trial court's findings control as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). When a trial court has made findings of fact, we apply the following two-tier standard of review: whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. *Id.* Findings will be set aside if they are clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* To

---

[3] Ind. Code § 31-14-13-6 provides:

> The court may not modify a child custody order unless:
>
> > (1) modification is in the best interests of the child; and
> >
> > (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter.

determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.* A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

[12] Father asserts the trial court erred in failing to apply the standard applicable to a request for a modification of custody, that he did not waive this argument, and that he made the argument in his proposed findings. In addition, Father contends that the evidence does not support the trial court's findings that Grandparents were *de facto* custodians of Child, that the court did not make findings that Grandparents provided the majority of Child's financial support, that "[w]hile [Child's] time with Grandparents varied throughout the four years prior to the Court judgment, the record is filled with testimony that Father cared for [Child] regularly," and that the findings "essentially penalized Father for allowing Grandparents to care for his son when at work." Appellant's Brief at 18. Father also asserts the court did not properly examine all the statutory factors in examining the best interest of Child including the wishes of Child, Father's interaction and relationship with Child, Child's adjustment to his home, school, and community, and the mental and physical health of Child if forced to relocate.

[13] Mother maintains the court correctly treated the case as involving an initial determination of custody because Father had been previously given temporary custody and the court had not entered a permanent custody order, that there was agreement of counsel for both parties that this was an initial custody

determination, that Father made no effort during the presentation of evidence to claim that the proceeding was a modification hearing, and that Father has waived this claim of error. Mother notes that the court's order stated that Grandparents never sought permanent custody and, accordingly, the custody dispute is solely between Father and Mother, and she argues that any error by the court in stating that Grandparents were *de facto* custodians is harmless since it played no role in the court's decision. Mother further argues the evidence shows Child spent the vast majority of his out of school time with Grandparents and that the GAL's report concluded that it appears Grandparents were the ones taking care of most of Child's primary needs. In addition, Mother argues the court properly awarded custody to her, that Father did not present any evidence regarding Child's wishes and Child was six years old at the time of the court's decision, and that the court made a number of statements regarding Father's relationship with Child and Child's school performance which Father does not challenge.

[14] We observe that, following Father's September 14, 2011 Petition to Establish Paternity and For Emergency Custody, the trial court entered an Agreed Order on October 31, 2011, which provided that "[t]he parties agree that [F]ather shall have the temporary custody of the parties' minor son until further order of the court." Appellant's Appendix at 75. Although Mother's October 8, 2014 motion requesting a hearing was captioned a petition to modify custody, the trial court clarified at the very beginning of the evidentiary hearing that it was making an original custody determination. Specifically, the court stated:

Alright, just a few matters for the record before we actually begin with the presentation of evidence. This is an older file. The original Petition for Paternity and Custody was filed back in 2011. The only Order that's ever been entered was an Emergency Order. There's never been a permanent custody determination. So this is not a modification hearing. This is an original determination of permanent custody. . . .

Transcript at 3. Father does not argue or point to the record to show that he objected to the trial court's determination at that time or at any point during the evidentiary hearing or argued to the trial court that the standard for custody modification should apply because Mother acquiesced to an emergency custody order. Accordingly, Father has waived our consideration of whether the determination was one of initial custody or change of custody. *See Werner v. Werner*, 946 N.E.2d 1233, 1245-1247 (Ind. Ct. App. 2011) (holding that the mother waived her claim of error and observing that a timely objection is a prerequisite to appellate review) (citing *Trout v. Trout*, 638 N.E.2d 1306, 1307-1308 (Ind. Ct. App. 1994), *trans. denied*), *trans. denied*.[4]

[15] A trial court's custody determination is afforded considerable deference as it is the trial court that sees the parties, observes their conduct and demeanor, and hears their testimony. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945-946 (Ind. Ct. App. 2006). Thus, on review, we will not reweigh the evidence, judge the credibility of witnesses or substitute our judgment for that of the trial court. *Id.*

_____

[4] To the extent the language of *Werner* may be unclear regarding waiver under these circumstances, we note that a party cannot waive application of the appropriate standard of review.

at 946. We will reverse the trial court's custody determination only if it is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom. *Id*.

[16] The standard for an initial custody determination is set forth in Ind. Code § 31-14-13-2, which provides:

> The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1)  The age and sex of the child.
>
> (2)  The wishes of the child's parent or parents.
>
> (3)  The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4)  The interaction and interrelationship of the child with:
>
>  (A)  the child's parent or parents;
>
>  (B)  the child's sibling; and
>
>  (C)  any other person who may significantly affect the child's best interests.
>
> (5)  The child's adjustment to the child's:
>
>  (A)  home;
>
>  (B)  school; and
>
>  (C)  community.
>
> (6)  The mental and physical health of all individuals involved.
>
> (7)  Evidence of a pattern of domestic or family violence by either parent.

(8)    Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

[17]    Ind. Code § 31-9-2-35.5 provides:

"De facto custodian", for purposes of IC 31-14-13, IC 31-17-2, and IC 31-34-4, means a person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least: (1) six (6) months if the child is less than three (3) years of age; or (2) one (1) year if the child is at least three (3) years of age.

Any period after a child custody proceeding has been commenced may not be included in determining whether the child has resided with the person for the required minimum period. . . .

[18]    Ind. Code § 31-14-13-2.5(b) provides:

In addition to the factors listed in section 2 of this chapter, the court shall consider the following factors in determining custody:

(1)    The wishes of the child's de facto custodian.

(2)    The extent to which the child has been cared for, nurtured, and supported by the de facto custodian.

(3)    The intent of the child's parent in placing the child with the de facto custodian.

(4)    The circumstances under which the child was allowed to remain in the custody of the de facto custodian, including whether the child was placed with the de facto custodian to allow the parent now seeking custody to:

(A)    seek employment;

(B)    work; or

(C)    attend school.

[19]    We observe that the trial court entered findings that Grandparents have never sought permanent custody of Child and that, accordingly, the custody dispute is solely between Father and Mother. Ind. Code § 31-14-13-2 requires a trial court, in making a custody determination in accordance with the best interests of the child, to consider all relevant factors including evidence the child has been cared for by a *de facto* custodian under subsection (8) and also evidence of the other factors listed in subsections (1) through (7). Even if Grandparents were not *de facto* custodians, the court was required to consider the interaction and interrelationship of Child with his "parents . . . and . . . any other person who may significantly affect [Child's] best interests" under Ind. Code § 31-14-13-2(4). The trial court's findings reflect that, in determining whether to award primary physical custody to Mother or Father, the court considered the extent to which Child was cared for, nurtured, and supported by Grandparents and the circumstances under which Child stayed with Grandparents. Further, the evidence before the court included testimony regarding Father's employment and work schedule since he and Mother separated, the extent to which Father and Child lived with Grandparents, the extent of the involvement of Father and Grandparents in making decisions related to the care of Child, and the GAL's report regarding the involvement of Father and Grandparents in Child's life, including the GAL's conclusions that it appeared Grandparents were the ones taking care of most of Child's primary needs. The court was troubled by the fact Grandfather routinely strips Child and photographs him after Mother

exercises parenting time, that Grandfather has taken nearly one hundred photographs of Child during this ritual, that despite making several reports no charges have ever been filed against Mother, and that while Father knows about the ritual and claims to disagree with it, he has done nothing to stop it.

[20] The trial court's findings and conclusions reflect that it considered the other factors set forth in Ind. Code § 31-14-13-2 as well. The order demonstrates the court considered evidence of Child's abuse, the interaction of Child and Mother, Father, and Grandfather, Child's adjustment in school, and the age, mental health, and development of Child and the maturity of Mother and Father. In particular, the court issued findings regarding the abuse of Child in August 2011 and the subsequent investigation; Mother's participation in parenting time with Child and how well the parenting time had gone; the previous conduct of Father and Grandfather during Mother's parenting time; Mother's employment and the fact she is married to a responsible person who has a good job and Father's education, living arrangements, and numerous jobs since October 2011. The order notes Child's problems since starting school including anger control, anxiety, difficulty starting and finishing tasks, difficulty following instructions, and that he has urinated on other students; Child's evaluation by a school psychologist and qualification for special education services, his individual education plan, his relative improvement since the plan was implemented, and Father's lack of interest in the psychologist's report or the education plan; and the behavior of Father and Grandfather in not telling Mother where Child attended school and that she was not permitted to contact

Child's school. The court stated it was very troubled by the fact Father only skimmed the school psychologist's report and did not appear particularly interested in the report's findings and that Father did not know Child's diagnosis and referred to it as "a big word." Appellant's Appendix at 13. The court also found that Child began receiving counseling in late September 2015 and stated that it was difficult to understand why Father waited so long to seek counseling for Child.

[21] With respect to Father's argument that the court did not properly address the opinions of Child's teacher and school psychologist, the record shows that Child's teacher testified that she witnessed Child's behaviors of name calling, pulling down his pants in public, urinating on the floor and on other students, hitting himself, stabbing himself with a pencil, and hitting, kicking, and pushing other students, and that Child's behavior did not improve "a lot" throughout the school year but "a little to the positive towards the end of the year." Transcript at 228. The court also heard the testimony of the school psychologist regarding her evaluation of Child, that Child's individual education plan would follow Child to whichever school system Child enrolls, and that she could not speak to the level of support Child might receive at another school.

[22] With respect to the wishes of Child, Ind. Code § 31-14-13-2 provides that a court shall give more consideration to the child's wishes if the child is at least fourteen years of age. The court found that Child was born on January 12, 2009, and Father does not point to the record to show that he presented

evidence regarding Child's wishes which the court failed to consider. The GAL's report indicated that she did not believe the age and sex of the child favored an award of custody to either parent and that Child does not have the emotional capacity to make a decision of this magnitude and is in no way able to weigh in on this type of a decision. The court heard the testimony of Father, Mother, Grandfather, Child's teacher and school psychologist, and Mother's current husband, and counsel for the parties thoroughly examined each of the witnesses. In light of the findings and conclusions of the court and the testimony presented at the evidentiary hearing, we cannot say that the trial court failed to consider Father's interaction with Child, Child's adjustment to his home, school, and community, the mental and physical health of Child, or the opinions of Child's teacher or school psychologist.

[23] Based upon the record and the trial court's order, we conclude that the trial court did not err in determining that Mother shall have primary physical custody of Child.

## *Conclusion*

[24] For the foregoing reasons, we affirm the trial court's custody determination.

[25] Affirmed.

Robb, J., and Mathias, J., concur.